## CHIN WING GOON et al. v. JOHNSON, Commissioner of Immigration.

Circuit Court of Appeals, First Circuit.
June 16, 1927.

No. 2116.

1. Habeas corpus ⬤═92(1)—In habeas corpus proceeding to set aside order of deportation, question whether petitioners had fair hearing is only one before court.

In habeas corpus proceeding to set aside order of deportation, the only question before the court is whether petitioners were accorded a fair hearing.

2. Habeas corpus ⬤═23—On petition for habeas corpus, conclusiveness of order of deportation held not affected because questions of citizenship were determined summarily.

In habeas corpus proceeding to set aside order of deportation, based on finding that petioners' father was not a native-born citizen, that question of father's citizenship was passed on summarily by administrative officers, and not by judicial hearing, held not to make orders any less binding on federal courts.

3. Habeas corpus ⬤═85(1)—Evidence held to establish citizenship of father of aliens seeking admission as sons of native-born citizen.

Evidence held sufficient to show that father of aliens seeking admission was native-born

citizen of the United States, justifying their admission.

Appeal from the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Habeas corpus proceeding by Chin Wing Goon and another against John P. Johnson, as Commissioner of Immigration. From an order denying their petition, petitioners appeal. Order reversed, and case remanded, with directions.

Daniel L. Smith, of Boston, Mass., for appellants.

John W. Schenck, Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., of Gloucester, Mass., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. This is a habeas corpus case. The petitioners sought admission into the United States at the port of Boston as the foreign-born sons of a native-born United States citizen, Chin Gin Lum. The special Board of Inquiry found that the relationship claimed existed, but that the citizenship of the father had not been "reasonably established." A petition was then filed to reopen the case and to receive additional testimony bearing upon the citizenship of the father. The petition was granted and three witnesses were examined, but their testimony did not change the opinion of the board relative to the alleged citizenship of the father.

[1, 2] It has been so often decided that in habeas corpus cases to set aside orders of deportation the only question before the court is whether the petitioners were accorded a fair hearing that no citation of authority is necessary. While the petitioners claimed admission as the foreign-born sons of a native-born citizen of the United States, the question of the father's citizenship could be passed upon in a summary manner by the administrative officers of the government. United States v. Ju Toy, 198 U. S. 253, 25 S. Ct. 644, 49 L. Ed. 1040; Tang Tun v. Edsel, 223 U. S. 673, 32 S. Ct. 359, 56 L. Ed. 606. Although citizenship of the father was in issue, it was not necessary, therefore, that it be determined by a judicial hearing as in case of one who is a resident of the United States.

In support of the claim of citizenship a certificate of discharge signed by United States Commissioner George E. Johnson was offered in evidence, which certified that Chin Gin Lum was discharged on May 12, 1898,

on the ground that he was an American citizen. Attached to this certificate was a photograph of Chin Gin Lum, and the application of the petitioners was denied solely on the ground that the father was not the Chin Gin Lum shown in the photograph. In addition to this certificate, the Board of Inquiry had before it a duly certified copy of the record made by the commissioner, including a transcript of the testimony before him. The father was examined at the Boston office on May 23, 1923, relative to his application for a return certificate as a citizen of the United States, and then presented the above-mentioned discharge certificate. The application was denied, and on appeal being entered from this decision it was dismissed.

In dismissing the appeal of these petitioners the Board of Review refers to its decision on the father's application and held that the photograph of the father of these applicants did not appear to be the likeness of the man now claimed to be identical for the following reasons: "First, the photograph on the discharge certificate then showed that the man discharged had two scars on his forehead, which appeared to have been of sufficient size and depth, so that they would probably not have been entirely obliterated by time. These scars did not appear on the forehead of the then applicant. Second, the then applicant's nose was more angular and less broad than that of the man discharged in 1898. Third, the lobes of the then applicant's ears fused with his face, whereas the photograph on the discharge certificate showed that the lobes of the ears of the man discharged did not fuse with his face. It was conceded that the absence of the scars and the shape of the nose might not be sufficient in themselves to disprove the claimed identity, but it was held that these were very detrimental to the claim that he was the man discharged, and that, even if they were not taken into consideration, the fact that the lobes of the then applicant's ears fused with his face, while those of the man discharged did not, was sufficient in itself to show that he was not the man discharged. The photograph on the discharge certificate has now been so damaged that one must look very carefully and have the best of light in order to see the lower part of that ear which should show the plainest, and be the one by which the matter of whether or not the lobe of the ear fuses with the face must be determined." One of the exhibits in the case is the testimony taken at the time of the application of the alleged father for a return certificate, and from this testimony it

appears that there were scars upon the temples of the applicant, and it would appear from the statement of the Board of Review that it rested its decision upon the differences between the lobes of the ears in the two photographs.

[3] We are not satisfied from a careful examination of the photographs that there is the marked difference between the lobes of the ears pointed out by the Board of Review. Chin Gin Lum was 47 years old at the time of the hearing, and the photograph of him annexed to the application of his sons and that annexed to the discharge certificate were before us as exhibits. In view of the well-known fact that great changes in one's facial appearance take place between the ages of 20 and 47, we think the claim of citizenship should not be denied upon any such uncertain grounds. After a careful comparison of the two photographs, we are satisfied that the differences pointed out by the Board of Review are fanciful and do not exist, and have reached the conclusion that the finding in this case that the father is not identical with the person whose photograph is annexed to the discharge certificate, based upon alleged differences between the photograph of a matured man of 47 and one of 20, was made without any supporting evidence, and that therefore the petitioners were not accorded a fair trial. Having reached this conclusion, we are of the opinion that the burden of proving that the father is a native-born citizen of the United States is sustained by the certificate of discharge and the father's testimony.

The order of the District Court is reversed, and the case is remanded to that court, with directions to issue an order for the discharge of the petitioners from the custody of the United States Commissioner of Immigration.